UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CRYSTAL MERIWETHER,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:16-cv-02463<br><br>Magistrate Judge Newbern |
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>ANGELINE HUGHES and CIERA HOLMAN,<br><br>Third-Party Defendants. | |

## **MEMORANDUM AND ORDER**

**I.     Introduction**

Plaintiff Crystal Meriwether initiated this action on August 12, 2016, by filing a civil warrant summoning Defendant Metropolitan Life Insurance Company (MetLife) to appear in the Metropolitan General Sessions Court of Davidson County, Tennessee. (Doc. No. 1-1, PageID# 4.) The warrant states the cause of action as:

> Breach of Life Insurance contract to pay death benefit to Plaintiff Beneficiary under Claim #20151001325 policy owned by Peter Meriwether, Jr. Defendant wrongfully paid two claimants falsely fil[ing] fraudulent claims, two-thirds of the policy benefits. The insurance company through negligence and bad faith paid claimants who were not children of the deceased.

(*Id.*) The warrant seeks recovery on these claims and a reasonable attorney's fee in an amount "under $50,000.00 Dollars." (*Id.*) Although the complaint provides no further detail, later filings show that Meriwether challenges MetLife's equal division of Peter Meriwether's death benefits among herself, Ciera Holman, and Angeline Hughes—each of whom claims to be Peter Meriwether's daughter. (Doc. No. 16.) Meriwether asserts that she is Peter Meriwether's only heir, that the full amount of his policy should have been paid to her, and that MetLife was negligent in failing to require birth certificates or other documentation from Holman and Hughes before paying their claims. (*Id.*)

MetLife removed the action to this Court on September 8, 2016, asserting federal question jurisdiction over Meriwether's claim under 28 U.S.C. § 1331. (Doc. No. 1, PageID# 2.) In its notice of removal, MetLife argues that federal jurisdiction exists because "[t]he subject life insurance policy was provided pursuant to the Federal Employees Group Life Insurance Act" (FEGLIA); "[f]ederal law governs the payment of life insurance benefits and the order of precedence under FEGLIA [(citing 5 U.S.C. § 8705)]"; "FEGLIA life insurance benefits are administered and adjudicated by MetLife's Office of Federal Employees Group Life Insurance pursuant to a contract between the United States Office of Personnel Management and MetLife"; and "[d]istrict courts of the United States have original jurisdiction over civil actions or claims arising under FEGLIA [(citing 5 U.S.C. § 8715)]." (*Id.*)

MetLife answered Meriwether's complaint on September 15, 2016, and asserted a counterclaim against Meriwether and a third-party complaint against Holman and Hughes. (Doc.

No. 6.) MetLife claims that, in the absence of a designated beneficiary and without knowledge of any competing claims, it paid Peter Meriwether's benefits in good faith and in accordance with the order of precedence determined by FEGLIA. (*Id.*) To the extent Meriwether may be determined to be the only proper beneficiary of Peter Meriwether's policy, MetLife seeks a setoff in the amounts it paid to Holman and Hughes. (*Id.*)

The parties litigated this case through discovery and completed briefing on MetLife's motion for summary judgment. (Doc. Nos. 21–24, 28–32, 34.) On February 21, 2017, the case was transferred to the undersigned magistrate judge for all further proceedings by the consent of all parties. (Doc. Nos. 36, 37.) The Court subsequently raised, *sua sponte*, its concern over the propriety of the removal in light of the lack of any apparent grounds for federal jurisdiction in Meriwether's complaint. (Doc. No. 40.) The Court directed MetLife, as the removing party, to show cause why the Court has jurisdiction over the action and invited any other party to respond to MetLife's position. (*Id.*) On November 6, 2017, MetLife responded to the Court's show cause order. (Doc. No. 41.) No other party addressed the jurisdiction issue.

The Court finds that it does not have jurisdiction to consider this case further and will order its remand to state court.

## II. Legal Standard

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A matter "arises under" federal law if "a well-pleaded complaint

3

establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)). Just as is required of cases initially filed in federal court, the federal right "must be an element, and an essential one, of the plaintiff's cause of action." *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 128 (1974). It must be found "upon the face of the complaint, unaided by the answer" and cannot be anticipated in a probable defense. *Id.*

Allowing removal of state law claims that implicate federal issues "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 310 (2005). However, "[t]he removal jurisdiction of the federal courts is to be 'scrupulously confined.'" *Nixon v. James*, 174 F. Supp. 2d 739, 742 (M.D. Tenn. 2001) (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941)). Cases removed from state court must be scrutinized for "any disruptive portent" of the exercise of federal jurisdiction to the balance between state and federal authority. *Grable*, 545 U.S. at 313–14. This creates a "strict policy" against retaining federal jurisdiction when to do so would threaten "the sovereignty of state governments and state judicial power." *Nixon*, 174 F. Supp. 2d at 742.

### III.     Analysis

The first steps of determining whether Meriwether's claims "arise under" federal law are easily resolved. The warrant filed in state court does not invoke a federal cause of action; it alleges

4

only that MetLife breached an insurance contract by negligently and in bad faith paying policy proceeds to two claimants who fraudulently claimed to be children of the insured. (Doc. No. 1-1, PageID# 4.) MetLife argues that 5 U.S.C. § 8715 confers on federal district courts "original jurisdiction . . . of a civil action . . . founded on [FEGLIA]." (Doc. No. 41, PageID# 506.) But MetLife omits critical words from the statute, which reads in full: "The district courts of the United States shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim *against the United States* founded on this chapter." 5 U.S.C. § 8715 (emphasis added). The United States is not a party to this action; thus, the statute does not establish federal jurisdiction in this case.

This Court's jurisdiction depends, therefore, on whether Meriwether's right to relief as claimed in her complaint otherwise "necessarily depends" on resolving an issue of federal law. *Empire*, 547 U.S. at 690. To meet this standard, MetLife must show that Meriwether's claims raise "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prod. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005).

MetLife first argues that Meriwether's right to relief necessarily depends on resolving the question of whether Meriwether is the only "child" of her father or whether Hughes and Holman are also his "children" as those terms are defined in FEGLIA and its regulations. (Doc. No. 41, PageID# 506–08.) MetLife is correct that FEGLIA and its regulations establish the order of precedence for payment of benefits and define the statute's relevant terms. *See* 5 U.S.C. § 8705(a); 5 C.F.R. § 870.101 (defining "child" under FEGLIA as "a legitimate child, an adopted child, or a recognized natural child, of any age"). However, the claims raised in Meriwether's complaint do not turn on the application or interpretation of those statutory or regulatory provisions. Instead,

5

Meriwether challenges MetLife's "negligence and bad faith [in paying] claimants who were not children of the deceased." (Doc. No. 1-1.) Thus, "[w]hile Plaintiff's claim might well implicate § 8705, it does not necessarily raise a federal issue, and might instead turn on other conduct not addressed by the statute." *Victoria v. Metro. Life Ins. Co.*, No. C 09-04179 CRB, 2010 WL 583946, at *2 (N.D. Cal. Feb. 16, 2010).

The Court need look no further for confirmation that this case does turn on issues other than FEGLIA's application than MetLife's arguments in favor of summary judgment, which rely solely on Tennessee law. (Doc. No. 22.) Although MetLife argues in response to the Court's show-cause order that Meriwether's claims will depend on the definition of "child" under FEGLIA (Doc. No. 41, PageID# 506–06), its summary judgment briefing directs the Court to Tennessee's statute defining the circumstances under which a man is presumed to be a child's father (Doc. No. 22, PageID# 334) (citing Tenn. Code Ann. § 36-2-304(a)). Further, MetLife argues for the application of Tennessee law to determine its duties as relevant to Meriwether's bad faith and negligence claims. (*Id.* at PageID# 331) (arguing that the Court should apply the rule of *Atkins v. Security Conn. Life Ins. Co.*, No. 02A01-9710-CV-00257, 1998 WL 900057 (Tenn. Ct. App. Dec. 28, 1998), establishing a good faith payment defense under Tennessee law).

Thus, while federal law provides the framework within which the subject insurance policy was issued and administered, Meriwether's claims raise state law issues. As many other courts have found in similar circumstances, "it is not clear 'why a proper federal-state balance' would place this case in federal court." *Victoria*, 2010 WL 583946 at *3 (remanding action in which plaintiff claimed breach of the covenant of good faith and fair dealing in distribution of FEGLIA benefits); *see also Parker v. Metro. Life Ins. Co.*, 264 F. Supp. 2d 364, 366 (D.S.C. 2003) (granting motion to remand because "[t]he real issues in this case are whether MetLife was negligent in

6

paying or whether Maxwell fraudulently obtained the FEGLI proceeds" under state law); *Kittner v. Metro. Life Ins. Co.*, No. 01-CV-0146E(SR), 2001 WL 388754, at *2 (W.D.N.Y. Apr. 13, 2001) ("Although federal statutes and regulations may ultimately be looked to at some point in this litigation, plaintiff's action, at its core, requires only an interpretation of the FEGLIA policy and such interpretation is guided by state law."). Because this case does not necessarily depend on the resolution of any contested and substantial issue of federal law, it is properly heard in state court. *See Grable & Sons*, 545 U.S. at 313.

MetLife's other arguments do not change this result. MetLife argues that federal jurisdiction exists because Meriwether's state law claims are preempted by FEGLIA. Specifically, MetLife contends that, "[b]y attempting to rely on state law for her position, Plaintiff seeks to recover damages and to impose a duty to investigate that conflict with and go beyond that which is required by FEGLIA, its regulations, and the FEGLI contract[.]" (Doc. No. 41, PageID# 508–09.) First, it is well-established that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint . . . ." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). The only exception to this rule is the complete preemption doctrine, which applies when a statute's "extraordinary" preemptive force covers an entire area of state law and "converts an ordinary state common-law complaint into one stating a federal claim for purpose of the well-pleaded complaint rule." *Id.*

But FEGLIA's preemption clause applies only to the extent that state law is inconsistent with the federal statute. 5 U.S.C. § 8709(d) (establishing preemption of state law by the statute "to the extent that the law or regulation is inconsistent with the contractual provisions"). *Compare Kittner*, 2001 WL 388754 at *2 (finding no preemption in case where "obligations to perform

7

[under FEGLIA policy were] 'a creation of the state'") (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109 155 (1936)), *with Hajdu v. Metro. Life Ins. Co.*, Civil Action No. 15-195, 2015 WL 2106129, *6–7 (W.D. Pa. May 6, 2015) (finding in the context of a motion to dismiss that Pennsylvania statute establishing bad faith conflicts with, and is therefore preempted by, FEGLIA). Because FEGLIA's preemption is not complete, it does not provide a basis for removal of Meriwether's claims. Moreover, MetLife has not established that FEGLIA's limited preemption clause would apply in this case. Although MetLife alludes to a discrepancy between the duties imposed on an insurer by state law and FEGLIA, it does not identify any conflicting provisions of state and federal law and, again, argues elsewhere that Tennessee law should apply to Meriwether's claims.

Finally, MetLife asserts that federal interests are heightened in this case because the United States subsidizes the life insurance policies available to its employees under FEGLIA. (Doc. No. 41, PageID# 511.) Although such fiscal assistance may increase the federal interest in FEGLIA administration, *see Metro. Life Ins. Co. v. Browning*, 839 F. Supp. 1508, 1514 (W.D. Okla. 1993) (citing cases), it does not tip the balance in favor of federal jurisdiction, especially in cases like this one where the issues arise between private parties. *Cf. Empire*, 547 U.S. at 683–84 (finding no federal question jurisdiction in suit concerning federal employee health insurance for which "the Federal Government pays about 75% of the premiums"). *See also Yorkshire Commons Ltd. Dividend Hous. Ass'n Ltd. P'ship v. City of Mount Pleasant*, No. 12-13468, 2012 WL 13002174, at *6 (E.D. Mich. Dec. 6, 2012) (noting that "*Empire Healthchoice* instructs that when a case centers [on] the actions of private parties and the allocation of funds between them (rather than the federal government), the case does not involve a substantial federal question"). MetLife's argument that it does is simply too broad. Under its terms, "all disputes involving the payment of

death benefits would implicate FEGLIA, and thus all of those cases, with their potentially small damage amounts and state law claims, would land in federal court." *Victoria*, 2010 WL 583946 at *3. As the court found in *Victoria*, "[t]his is to be avoided, if possible." *Id.*

"[I]t takes more than a federal element 'to open the 'arising under' door.'" *Empire*, 547 U.S. at 701 (quoting *Grable & Sons*, 545 U.S. at 313). Here, Meriwether raises traditional state law claims of negligence and bad faith that will be resolved under Tennessee authority. Without clear identification of a necessary, contested, and substantial federal issue, the door to this court remains closed.

**IV.     Conclusion**

The Court finds that it lacks jurisdiction to consider this action further and hereby REMANDS it to the Metropolitan General Sessions Court of Davidson County, Tennessee. All other pending motions are DENIED AS MOOT. The Clerk is directed to close the file.

It is so ORDERED.

ALISTAIR E. NEWBERN
United States Magistrate Judge